FILED
2021 Jun-04 PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BETTY HERARD,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | } Case No.: 2:19-CV-02130-MHH |
| | } |
| **UNIVERSITY OF ALABAMA AT BIRMINGHAM,** | } |
| | } |
| **Defendant.** | } |

## MEMORANDUM OPINION AND ORDER

In this employment case, plaintiff Betty Herard is proceeding *pro se*, meaning without the assistance of an attorney. She alleges that the University of Alabama at Birmingham violated Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. (Doc. 5). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Board of Trustees for the University of Alabama has asked the Court to dismiss Ms. Herard's amended complaint for failure to state a claim upon which relief can be granted. (Doc. 11).[1] For the reasons stated in this opinion, the Court grants the Board's motion to dismiss.

---

[1] Ms. Herard names "UAB" as the defendant in her amended complaint. (Doc. 5, p. 1). The proper name of the defendant is the Board of Trustees for the University of Alabama. Therefore, the Court will refer to the Board as the defendant in this matter.

**MOTION TO DISMISS STANDARD**

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of FED. R. CIV. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'" *Maledy v. City of Enterprise*, 2012 WL 1028176, *1 (M.D. Ala. March 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555).

"Thus, the pleading standard set forth in Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations." *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012). "Where those two requirements are met … the form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to

2

categorize correctly the legal theory giving rise to the claim." *Keene*, 477 Fed. Appx. at 583.

This is particularly true with respect to *pro se* complaints. Courts must liberally construe *pro se* complaints. *Erickson*, 551 U.S. at 94. "'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94. (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). *Cf.* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice."). Still, the Court "may not serve as de facto counsel for a party, or … rewrite an otherwise deficient pleading in order to sustain an action." *Ausar-El ex. rel. Small, Jr. v. BAC (Bank of America) Home Loans Servicing LP*, 448 Fed. Appx. 1, 2 (11th Cir. 2011) (internal quotations and citations omitted).

When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *See Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015). Therefore, the Court construes all factual allegations and the reasonable inferences from those allegations in the light most favorable to Ms. Herard.

**FACTUAL ALLEGATIONS**

Betty Herard is a Black Haitian-American woman, and she is over 40 years old. (Doc. 5, p. 1, ¶ 1). On February 11, 2019, UAB hired Ms. Herard as a Clinical Trials Administrator in the Hematology/Oncology Department. (Doc. 5, p. 1, ¶ 1). Ms. Herard alleges that she "endured several discriminatory and disparaging statements against [her] national origin, age[,] and race." (Doc. 5, p. 1, ¶ 2). These statements included, "I need to know my place in the South," "My credentials have me believing I have overcome," and "I need to be planning my retirement at my age as opposed to applying for a doctorate program." (Doc. 5, p. 1, ¶ 2). Ms. Herard does not allege who made these statements, when the statements were made, or whether the statements were made to her or another individual. Drawing reasonable inferences from this allegation in Ms. Herard's favor, the Court infers that other UAB employees directed these comments to Ms. Herard.

In her EEOC charge, Ms. Herard explained that at some point between April and May 2019, she asked Dr. Julie Kanter, an Associate Professor in UAB's Hematology/Oncology Department, how to pursue a pay increase. (Doc. 5, p. 4). After Dr. Kanter told Ms. Herard that she could not help her with her wages, Ms. Herard spoke with a representative in UAB's Human Resources Department. (Doc. 5, p. 4). Ms. Herard alleges that Dr. Kanter was upset "because allegedly I went over her head." (Doc. 5, p. 4).

4

On June 20, 2019, Dr. Kanter gave Ms. Herard a verbal warning for unsatisfactory job performance and misconduct, and Ms. Herard was put on a Performance Improvement Plan.  (Doc. 5, p. 4).  Ms. Herard denied the reported misconduct and asked Human Resources to remove the write-up from her file, which the HR representative refused to do.  (Doc. 5, p. 4).  Ms. Herard sought early transfer to a different position to address her financial concerns, but Dr. Kanter extended Ms. Herard's probationary period, preventing a transfer.  (Doc. 5, p. 4).  On August 9, 2019, Ryan Outman, UAB's Division Administrator for the Hematology/Oncology Department, gave Ms. Herard a written warning and a letter requesting her resignation to avoid an extension of the probationary period.  (Doc. 5, p. 4).  Ms. Herard "was coerced under distress to resign [her] position effective October 31, 2019."  (Doc. 5, pp. 4–5).

Ms. Herard indicated in her September 2019 EEOC charge that she believed she was discriminated against because of race, national origin, and age and that she was retaliated against in violation of Title VII and the Age Discrimination in Employment Act of 1967.  (Doc. 5, pp. 4–5).

After receiving a right to sue letter from the EEOC, Ms. Herard timely filed this federal lawsuit against UAB Hematology/Oncology, Dr. Kanter, Mr. Outman, Emily Warner, and Dr. Ayesha Bryant for violations of Title VII and the ADEA.  (Doc. 1).  Ms. Herard filed an amended complaint against only UAB on March 17,

2020. (Doc. 5). The Board of Trustees for the University of Alabama then filed its motion to dismiss this action. (Doc. 11).[2]

## ANALYSIS

In the discussion that follows, the Court first addresses Ms. Herard's allegations of race and national origin discrimination under Title VII and then turns to the doctrine of Eleventh Amendment immunity as it pertains to Ms. Herard's ADEA claim against the Board.

### A. Title VII

---

[2] In her response to the Board's motion to dismiss, Ms. Herard describes facts that she did not include in her complaint, amended complaint, or September 2019 EEOC charge about hostile treatment from colleagues in UAB's Anesthesiology Department in 2018, predating Ms. Herard's employment in UAB's Hematology/Oncology Department. (Doc. 29, p. 7). Because the Court must determine whether the factual allegations in Ms. Herard's amended complaint are sufficient to state a claim against the Board, the Court has not accounted for the new factual allegations in Ms. Herard's opposition to the Board's motion to dismiss.

Were those facts included in Ms. Herard's amended complaint as the basis for additional claims against the Board, the Board would be able to challenge the additional claims as unexhausted because Ms. Herard did not complain about the conduct of employees in UAB's Anesthesiology Department in her September 2019 EEOC charge. To the extent that Ms. Herard might attempt to rely on a November 2018 or April 2019 EEOC charge that she mentions in her opposition brief but has not placed in the record to establish exhaustion, claims based on conduct that allegedly occurred while she worked in UAB's Anesthesiology Department in 2018 likely would be untimely. *See* 29 C.F.R. § 1626.7(a); *see also Hipp v. Liberty National Life Ins. Co.*, 252 F.3d 1208, 1214 n. 2, 1220 (11th Cir. 2001) (explaining that plaintiffs in "non-deferral" states, which are those states that do not have "state entities authorized to grant or seek relief for victims of . . . discrimination," must file their charges of discrimination within 180 days of the allegedly discriminatory acts).

To the extent that Ms. Herard mentions the conduct of employees in another UAB department as evidence of the discriminatory intent of employees in UAB's Hematology/Oncology Department, the Court need not consider those allegations at this stage of the litigation because Ms. Herard did not allege those facts in her amended complaint.

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Reading her original complaint, amended complaint, and EEOC charge together liberally, Ms. Herard asserts claims for disparate treatment, harassment or a hostile work environment, and retaliation in violation of Title VII.

### *Disparate Treatment*

Ms. Herard contends that she suffered from discrimination because of her race and national origin. Ms. Herard alleges that Dr. Kanter refused to help her pursue a pay raise and that she was coerced by a member of UAB's Hematology/Oncology Department into resigning from her position after she spoke to a UAB Human Resources representative about a pay raise. (Doc. 5, pp. 4–5).

To state a claim for disparate treatment under Title VII, an employee must "provide enough factual matter to plausibly suggest intentional discrimination." *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017). At a minimum, a Title VII plaintiff must allege that "'(1) the defendant took an adverse employment action against [her]; and (2) [a protected characteristic] was a motivating factor for the defendant's adverse employment action.'" *Quigg v. Thomas Cnty. Sch. Dist.*,

7

814 F.3d 1227, 1239 (11th Cir. 2016) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008)); *see* 42 U.S.C. § 2000e–2(m).

Ms. Herard has not adequately alleged facts that support her assertion that the Board intentionally discriminated against her based on her race or national origin. For factual allegations to support a claim of disparate treatment under Title VII, the facts must concern different treatment based on a protected characteristic of the plaintiff. *See Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998) (holding that Title VII does not set forth "a general civility code for the American workplace"); *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (holding that "[i]nnocuous statements or conduct, or boorish ones that do not relate to the sex [or another protected characteristic] of the actor or of the offended party (the plaintiff)," are not actionable under Title VII).

Here, Ms. Herard alleges that Dr. Kanter was unwilling to help her pursue a pay raise, but Ms. Herard does not allege that Dr. Kanter was in a position to help her get a pay raise or that Dr. Kanter helped other employees get raises but refused her because she is a Black Haitian-American. Ms. Herard has not alleged that Dr. Kanter made discriminatory statements to her or to others about her. At most, Ms. Herard's allegations concerning Dr. Kanter evidence a lack of collegiality and possible retaliation because Ms. Herard went over Dr. Kanter's head, but there is no

allegation concerning Dr. Kanter that suggests that Ms. Herard's race or national origin motivated Dr. Kanter's conduct.

Accordingly, the Court will dismiss Ms. Herard's Title VII claim for disparate treatment.

*Harassment/Hostile Work Environment*

To the extent that Ms. Herard asserts a Title VII claim for harassment or a hostile work environment, that claim also fails on the facts alleged. Title VII prohibits an employer from maintaining a "'workplace . . . permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted). Unlike disparate treatment claims that involve discrete acts, "[a] hostile work environment claim depends on 'a series of separate acts that collectively constitute one unlawful employment practice.'" *Chambliss v. Louisiana–Pacific Corp.,* 481 F.3d 1345, 1349 n. 1 (11th Cir.2007) (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 117 (2002)) (internal quotations omitted). To establish a Title VII claim for hostile work environment, a plaintiff must show:

> "(1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the

employer is responsible for such environment under either a theory of vicarious or of direct liability."

*Miller v. Kenworth of Dothan, Inc*., 277 F.3d 1269, 1275 (11th Cir. 2002). The severe or pervasive element has two components: the plaintiff must subjectively perceive the conduct as hostile or abusive, and the conduct must be objectively hostile or abusive. *Miller*, 277 F.3d at 1276. Under the objective prong, courts consider "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller*, 277 F.3d at 1276.

With respect to Title VII, Ms. Herard alleges that someone remarked that she "need[ed] to know her place in the South" and that her credentials had her believing that she had "overcome." These remarks are race-based and derogatory, but without more, they do not suffice to support a hostile work environment claim under *Miller* because Ms. Herard has not explained who made the statements, how often the statements were made over the six-month period that she worked at in UAB's Hematology/Oncology Department, or how the statements impacted her work.

On the record before the Court, Ms. Herard has not pleaded facts that indicate that that she suffered from severe or pervasive race-based or national-origin based hostile conduct. Therefore, the Court will grant the Board's motion to dismiss regarding Ms. Herard's Title VII hostile work environment claim.

*Retaliation*

Ms. Herard alleges in her September 2019 EEOC charge that Dr. Kanter retaliated against her because Ms. Herard "went over her head" to ask someone in Human Resources how she could obtain a pay raise. (Doc. 5, pp. 4–5). After Ms. Herard spoke with the HR representative, Dr. Kanter allegedly gave Ms. Herard a verbal warning for unsatisfactory job performance and extended Ms. Herard's probationary period, which prevented Ms. Herard from transferring to a more lucrative position. (Doc. 5, pp. 4–5). Then, Mr. Outman in UAB's Hematology/Oncology Department gave Ms. Herard a letter in which she was asked to resign. (Doc. 5, pp. 4–5).

To state a claim of retaliation under Title VII, "a plaintiff must first show (1) that 'she engaged in statutorily protected activity,' (2) that 'she suffered an adverse action,' and (3) 'that the adverse action was casually related to the protected activity.'" *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134–35 (11th Cir. 2020) (citing *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018)); *see also Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir. 2009). A plaintiff alleging a retaliation claim under Title VII "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Uni. of Texas SW Med. Center v. Nassar*, 570 U.S. 338, 362 (2013). "In other words, 'a

plaintiff must prove that had she not [engaged in the protected conduct], she would not have been fired.'" *Gogel*, 967 F.3d at 1135 (quoting *Jefferson*, 891 F.3d at 924).

An employee engages in statutorily protected activity "if (1) '[she] has opposed any practice made an unlawful employment practice by this subchapter' (the opposition clause) or (2) '[she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter' (the participation clause)." *Clover v. Total. Sys. Servs., Inc.*, 176 F.3d 1346, 1350 (11th Cir. 1999) (quoting 42 U.S.C. § 2000e-(3)(a)). As to the latter test, Ms. Herard has not alleged in her complaint, her amended complaint, or her September 2019 EEOC charge that she made a charge or participated in a Title VII proceeding.

To state a claim for retaliation based on opposition conduct, a plaintiff must establish both that she subjectively believed the employer was engaged in unlawful employment practices when she opposed the conduct and that her belief was objectively reasonable. *See Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). Ms. Herard has not alleged that she took steps to oppose race or national origin discrimination at UAB that prompted Dr. Kanter to retaliate against her. Again, Ms. Herard's allegations concerning Dr. Kanter have nothing to do with race, and Ms. Herard has not alleged in her complaints or in her current EEOC charge that she complained to someone at UAB about the race-based

statements that she heard while working in UAB's Hematology/Oncology Department.[3]

Because Ms. Herard has not alleged that Dr. Kanter or someone else at UAB retaliated against her for protected conduct, the Court will grant the Board's motion to dismiss as to her retaliation claim.

**B. Age Discrimination in Employment Act**

Ms. Herard alleges that she was discriminated against because of her age in violation of the Age Discrimination in Employment Act when she was told that she needed to be planning her retirement "at [her] age as opposed to applying for a doctorate program." (Doc. 5, p. 1, ¶ 2). The Board argues that under the Eleventh Amendment, it is immune from Ms. Herard's ADEA claim. (Doc. 11, pp. 16–17).

The ADEA "prohibits employers from 'fail[ing] or refus[ing] to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Ashkenazi v. S. Broward Hosp. Dist.*, 607 Fed. Appx.

---

[3] Again, in her brief in opposition to the Board's motion to dismiss, Ms. Herard describes EEOC charges that pre-date the September 2019 EEOC charge in which Ms. Herard exhausted her current claims. (Doc. 5, p. 4; Doc. 29, p. 7). Ms. Herard analogizes her treatment in UAB's Hematology Department to her previous experiences in UAB's Anesthesiology Department. (Doc. 29, pp. 7–9). Even if information concerning other EEOC charges appeared in Ms. Herard's current complaint and was properly before the Court, Ms. Herard has not alleged that anyone in UAB's Hematology Department was aware of her complaints about conduct in UAB's Anesthesiology Department such that actions taken in the Hematology Department might be viewed as retaliation for complaints that Ms. Herard made concerning UAB employees in UAB's Anesthesiology Department.

958, 961 (11th Cir. 2015) (quoting 29 U.S.C. § 623(a)(1)); *see also Sims v. MVM, Inc.*, 704 F.3d 1327, 1331–32 (11th Cir. 2013). The ADEA provides to individuals who are at least 40 years of age a cause of action against their employers for employment discrimination based on the individuals' age. 29 U.S.C. § 623.

But public employers like the Board may be immune from these claims. The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. The Eleventh Amendment shields unconsenting states from private suits in federal courts, which means plaintiffs ordinarily cannot sue states in federal court for money damages. States and state agencies are entitled to Eleventh Amendment immunity for ADEA claims. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91–92 (2000). In Alabama, boards of trustees for public universities are agents of the State. *See Shuler v. Board of Trustees of Uni. Of Ala.*, 480 Fed. Appx. 540, 544 (11th Cir. 2012) (holding that the Board of Trustees for the University of Alabama is entitled to Eleventh Amendment Immunity from ADEA claims).

The Board, as an agent of the state of Alabama, is immune from Ms. Herard's ADEA claim because the Board is entitled to Eleventh Amendment immunity. Therefore, the Court will dismiss Ms. Herard's ADEA claim against the Board.

**CONCLUSION**

For the reasons stated above, the Court grants the Board's motion to dismiss. The Court dismisses Ms. Herard's Title VII claims against the Board without prejudice for failure to state a claim and dismisses her ADEA claim against the Board with prejudice because the Board is immune from the claim.

**DONE** and **ORDERED** this June 4, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE